IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

        Plaintiff,

    v.

THOMAS FRANCIS FAY, III,

        Defendant.

_____/

NO.  06-MJ-0203 DAD

ORDER RE DEFENDANT'S MOTION

TO SUPPRESS EVIDENCE

**INTRODUCTION**

On October 24, 2006, the above-entitled action came before the court on defendant's motion to quash arrest and suppress evidence. Laura Friedman, Certified Law Student, appeared on behalf of the United States and Roger Doyle, Certified Law Student, of the Federal Defender's Office appeared for defendant Thomas F. Fay III.

**FACTS**

Defendant Fay is charged in this misdemeanor action with driving under the influence of alcohol and drugs in violation of

1

California Vehicle Code § 23152(a); driving a vehicle with a blood alcohol level of .08 percent or above in violation of California Vehicle Code § 23152(b); and endangering the person and health of a child in violation of California Penal Code § 273a(b).  The charges against the defendant stem from an incident occurring at Beale Air Force Base on June 4, 2006.

The defendant moves to quash his arrest and suppress all evidence seized from him on the night in question on the ground that his arrest was unlawful and thereby tainted his implied consent to the breathalyzer test administered by California Highway Patrol (CHP) officers.  The government opposes the motion.  Defendant's request for an evidentiary hearing was denied by the court because the  facts material to resolution of the pending motion are undisputed.   The court summarizes those facts below and will then address the wide-ranging arguments of the parties to the extent necessary.

On June 3, 2006, at about 11:00 p.m., defendant Fay drove into the exit of a gas station located on Beale Air Force Base and asked a man pumping gas for directions off base.  The man pumping gas was an off-duty reserve police officer with the Nevada City Police Department by the name of Ken Anspach.  As Mr. Anspach approached defendant he smelled alcohol emanating from defendant Fay, who was also observed to have red, watery eyes, slurred speech and appeared disoriented and confused.  Based upon his law enforcement experience, Mr. Anspach believed defendant Fay was under the influence of alcohol. When asked, defendant Fay admitted that he had consumed alcohol that /////

day at a picnic.   Passengers in the car driven by the defendant were the defendant's son-in-law and young (7-10 years old) grandson.

Mr. Anspach showed defendant Fay his badge and told him to turn off his car and remain there while he contacted the military police.   Defendant Fay complied with these instructions as Mr. Anspach called base security and informed them of a suspected drunk driver. Shortly thereafter Senior Airman Martin Ferguson responded and found defendant Fay seated behind the wheel of the car with the engine off. Airman Ferguson found the defendant to be disoriented, smell of alcohol, exhibit red eyes and slurred speech.   Staff Sergeants Wortman and Goad then arrived.   Sergeant Wortman administered the Horizontal Gaze Nystagmus (HGN) test to the defendant, which the officer concluded Fay failed.[1]   In response to Sergeant Wortman's questions, defendant Fay also admitted that he had taken 100 mg. of morphine earlier that day.   Because the security officers' portable breathalyzer was broken, they called California Highway Patrol (CHP) for assistance.

CHP officers Brandt Anderson and Alex Tomachoff arrived on the scene at about 12:45 a.m. on June 4, 2006 and were told what had taken place up to that time.   They contacted defendant Fay who was sitting on a concrete barrier next to his car.   His speech was still somewhat slow and slurred.   The CHP officers administered another HGN and a finger count test.   The CHP officers then arrested defendant Fay

---

[1]   Defendant Fay is a lower leg amputee who suffers from Type-II diabetes.   He had removed his prosthetic leg in order to drive.   Due to this disability the security officers were unable to administer other field sobriety tests.

and advised him of the implied consent requirement under California Vehicle Code § 23612.  They then administered a breathalyzer test with defendant Fay registering readings of 0.10% and 0.11% Blood Alcohol Content.  The defendant was then taken into custody by the CHP officers and transported to the Yuba County Jail for booking.

The defense contends that the reasonableness of an arrest by state officers must be determined under state law.  The defense then asserts that Mr. Anspach was a private citizen who unlawfully arrested defendant Fay in violation of California Penal Code § 837 because no criminal offense occurred in Anspach's presence.  The defense asserts that Anspach unlawfully arrested defendant Fay by showing his badge and purporting to act under that authority.  Next, the defense contends that the CHP officers lacked authority to arrest defendant Fay because he did not commit an offense in their presence either. Moreover, the defense argues that the CHP officers lacked probable cause to make an arrest.  The defense concludes that because there was no lawful arrest, the defendant's consent to a breathalyzer test was not voluntary and the results must be suppressed.

The government responds in shotgun fashion as follows. First the government argues that it is federal law and not state law that controls resolution of the pending motion.  Second, the government asserts that as a matter of law off-duty reserve officer Anspach did not arrest the defendant.  The government contends that, in any event, Anspach's actions "were reasonable under the circumstances."  Third, the government argues that even if state law were relevant to the inquiry, reserve officer Anspach is authorized

under California Penal Code § 830.3 to detain anyone who commits a public offense in the officers presence where there is immediate danger to person or property or risk of escape.  The government contends that all of those requirements were met in this case. Fourth, the government asserts that there was no Fourth Amendment violation because the reserve officer was a private citizen and the defendant has not shown that Anspach was acting on behalf of the government.  Fifth, it is argued by the government that even if the reserve officer arrested defendant Fay regardless of whether he was acting as a private citizen or as a police officer, the arrest was a proper citizen's arrest authorized by California Penal Code § 837. Sixth, and finally, the government contends that the arrest of the defendant by CHP officers, even though the charged offenses were committed outside their presence, is authorized by California Vehicle Code § 40300.5 and because the CHP officers in making the arrest could reasonably rely on the representations of reserve officer Anspach that he had observed the defendant driving.

**ANALYSIS**

I.   State or Federal Law

As noted above, defendant Fay argues that the validity of his arrest, and the subsequent administration of the breathalyzer test by state law enforcement officers must be determined under California law.  Defendant relies on the decision in United States v. Mota, 982 F.2d 1384 (9th Cir. 1993).  The government argues that federal law controls the issue presented in this case, quoting the decision in Mota as standing for the proposition that "evidence seized in

compliance with federal law is admissible without regard to state

law." (Opposition at 4.)

The government's argument is unpersuasive because it does

not accurately reflect the holding of the court in <u>Mota</u>.  Immediately

after the language quoted by the government, the court stated:

> This does not necessarily mean, however, that
> state law will always be irrelevant in assessing
> the legality of a seizure as a matter of federal
> law.  As we subsequently observed in <u>United States
> v. Wanless</u>, 882 F.2d 1459 (9th Cir. 1989), federal
> law may require that searches and seizures be
> conducted in accordance with state law.  <u>Id.</u> at
> 1464.  In <u>Wanless</u>, for example, we noted that
> under federal law, inventory searches "must be
> conducted in accordance with the official
> procedures of the relevant state or local police
> department."  <u>Id.</u>  Thus, in evaluating the
> appropriateness of excluding evidence seized by
> state officials pursuant to an inventory search,
> federal courts must necessarily consider the
> lawfulness of the search as a matter of state law.
>
> Similarly, whether an officer is authorized
> to make an arrest will ordinarily depend "in the
> first instance, on state law." <u>Michigan v.
> DeFillippo</u>, 443 U.S. 31, 36, 99 S.Ct. 2627, 2631,
> 61 L.Ed.2d 343 (1979).  We have held in the
> context of a suit brought under 42 U.S.C. § 1983,
> that state law governing an arrest is irrelevant
> to determining whether the arrest deprived an
> individual of rights secured by the federal
> constitution or a federal statute.  <u>See</u> <u>Barry v.
> Fowler</u>, 902 F.2d 770, 772 (9th Cir.1990).  But
> here the government would have us sanction an
> otherwise unconstitutional search on the basis of
> an arrest which is illegal as a matter of state
> law.  Precedent forecloses such a holding,
> however, for it is clear that state law governing
> arrests is relevant to assessing the
> constitutionality of a search incident to that
> arrest.  In <u>United States v. Di Re</u>, 332 U.S. 581,
> 68 S.Ct. 222, 92 L.Ed. 210 (1948), for example,
> the Supreme Court reversed a conviction based on
> evidence seized during a search incident to
> arrest.  The Court held that the search incident
> to arrest was unlawful since the arresting

6

officers had no authority to arrest under state
law.

* * *

In <u>Welsh v. Wisconsin</u>, 466 U.S. 740, 104
S.Ct. 2091, 80 L.Ed.2d 732 (1984), for instance,
the Court addressed the circumstances under which
the Fourth Amendment prohibits police from making
a warrantless arrest. <u>Id.</u> at 742, 104 S.Ct. at
2093. The Court held that the reasonableness of
such an arrest is to be determined in light of the
state's assessment of the gravity of the offense
justifying the arrest, as expressed by the state's
classification of the offense. <u>Id.</u> at 753-754,
104 S.Ct. at 2099-2100. We similarly hold that in
evaluating a custodial arrest executed by state
officials, federal courts must determine the
reasonableness of the arrest in reference to state
law governing the arrest.

<u>Mota</u>, 982 F.2d 1387-88.

Thus, the law in this circuit dictates that questions
regarding the authority of state or local law enforcement officials to
arrest a suspect, or the reasonableness of their conduct in doing so,
are ones that must be determined by reference to state law. <u>Bingham
v. City of Manhattan Beach</u>, 341 F.3d 939, 950 (9th Cir. 2003); <u>United
States v. Cormier</u>, 220 F.3d 1103, 1111-12 (9th Cir. 2000).

II.   <u>The Actions of Off-Duty, Reserve Police Officer Anspach</u>

As noted above, the defense contends that reserve officer
Anspach arrested Mr. Fay when, after being approached by the defendant
for directions, Anspach displayed his badge and instructed the
defendant to turn off his car engine and remain while base security
was contacted. The government counters that, pursuant to various
theories, no arrest occurred. The issue need not be resolved,
however, because under California law, reserve officer Anspach was

7

1  authorized to instruct Mr. Fay to remain at the gas station while base

2  security was contacted.

3       California Penal Code § 830.1(a)(3) provides that any peace

4  officer has authority, extending to any place in the state, with

5  respect to "any public offense committed or which there is probable

6  cause to believe has been committed in the peace officer's presence,

7  and with respect to which there is immediate danger to person or

8  property, or of the escape of the perpetrator of the offense."  A

9  reserve police officer, such as reserve officer Anspach, is a peace

10 officer for these purposes.  See Cal. Penal Code § 830.6(a).  Next,

11 California Penal Code § 836(a) states that:

12        A peace officer may arrest a person in obedience
          to a warrant, or, pursuant to the authority
13        granted to him or her by Chapter 4.5 (commencing
          with Section 830) of Title 3 of Part 2, without a
14        warrant, may arrest a person whenever any of the
          following circumstances occur:

15
          (1) The officer has probable cause to believe that
16        the person to be arrested has committed a public
          offense in the officer's presence.

17

18 Finally, California Penal Code § 830.3 provides that the authority of

19 peace officers "extends to any place in the state for the purpose of

20 performing their primary duty or when making an arrest pursuant to

21 Section 836 of the Penal Code as to any public offense with respect to

22 which there is immediate danger to person or property, or of the

23 escape of the perpetrator of that offense . . . ." (emphasis added).

24       The broad scope of the authority conferred under this

25 statutory scheme has been recognized by California courts.  See Inouye

26 v. County of Los Angeles, 30 Cal. App. 4th 278, 284 (1994); Johnson v.

                                    8

*Lewis*, 120 Cal. App. 4th 443, 454 (2004).  Thus, it has been found that an off-duty county public safety officer was authorized to arrest the driver of a vehicle who had confronted the officer late at night on a highway in order to determine whether the driver was under the influence of alcohol or drugs.  *Inouye*, 30 Cal. App. 4th at 281, 284.  Likewise, it has been found that an off-duty arson investigator was authorized under state law to arrest the driver of a vehicle he encountered on the freeway for traffic violations that posed an immediate danger to persons or property.  *Johnson*, 120 Cal. App. 4th at 454.

Here, off-duty reserve officer Anspach saw defendant Fay drive his vehicle the wrong direction into the gas station through the exit.  When Fay approached and asked for directions, Anspach smelled alcohol emanating from the defendant, who was also observed to have red, watery eyes, slurred speech and appeared disoriented and confused.  Based upon his law enforcement experience Mr. Anspach believed defendant Fay was under the influence of alcohol.  Moreover, defendant Fay admitted that he had consumed alcohol that day at a picnic.  Passengers in the car driven by the defendant were the defendant's son-in-law and young (7-10 years old) grandson.  Under these circumstances, having seen the defendant drive into the gas station, Anspach had probable cause to believe that Fay had committed the public offense of driving under the influence of alcohol in his presence.  Given the nature of that offense and especially in light of the presence of a young passenger in the vehicle, there was reason to believe that the public offense in question posed an immediate danger

9

to persons or property.  Accordingly, under California law, off-duty officer Anspach was authorized to arrest and detain defendant Fay pending further investigation.[2]  To the extent defendant's motion to suppress is premised on the notion that his implied consent to the administration of the blood alcohol test was tainted by his unlawful arrest, his argument must be rejected.

III.   The Actions of the CHP Officers

The defense also argues that the CHP officers lacked the authority to arrest defendant Fay for driving under the influence because the alleged offense did not occur in their presence.  The argument is unpersuasive.  First, as discussed above, defendant Fay was detained by off-duty reserve officer Anspach who did see the defendant driving under the influence of alcohol.  Second, even if the CHP officers were the first to arrest the defendant, the fact that the CHP officers did not see the defendant driving does not require the suppression of evidence under either California or federal law.

In the case of People v. Trapane, 1 Cal. App. 4th Supp. 10 (1991), the defendant appealed an order of the trial court denying his

---

[2] Even if off-duty reserve police officer Anspach is viewed as a mere private citizen, his arrest and detention of defendant Fay would still have been lawful.  The parties agree that California Penal Code § 837 authorizes a private citizen to make an arrest for a public offense committed in the citizen's presence.  Defendant Fay argues that because Anspach never saw him driving recklessly, the offense of driving under the influence of alcohol was not committed in Anspach's presence.  The argument lacks merit.  As noted above, Anspach saw defendant drive his car into the gas station going the wrong way and then observed defendant Fay exhibit multiple signs of being under the influence of alcohol.  Defendant Fay then admitted to Anspach that he had consumed alcohol that day at a picnic.  Under these circumstances, the court finds that the offense of driving under the influence of alcohol was committed in Anspach's presence and that he was also authorized under California Penal Code § 837 to arrest the defendant.

motion to suppress evidence.  There, a police officer had encountered a vehicle stopped on the sidewalk with the headlights, taillights and engine on, the keys in the ignition and the hood of the car hot to the touch.  1 Cal. App. 4th Supp. at 12.  The defendant was seated behind the wheel. (Id.)  The officer spoke to the defendant and observed the odor of alcohol on her breath and her eyes to be glassy and watery. (Id.)  When she exited the vehicle she was unsteady. (Id.) She failed the field sobriety test. (Id.)  The officer arrested the defendant and transported her to police headquarters where a breath test was administered. (Id.)  In the subsequent criminal prosecution, just as in the present case, the defense moved to suppress the results of the breath test on the grounds that the arresting officer did not observe the defendant driving, rendering the warrantless arrest unlawful under Penal Code § 836.  The court concluded that suppression of the breath test results was not appropriate, observing as follows:

> The California Supreme Court . . . in In re Lance W. (1985) 37 Cal.3d 873, 896 [210 Cal.Rptr. 631, 694 P.2d 744], [] concluded: Evidence will not be suppressed unless the seizure was in violation of the Fourth Amendment to the United States Constitution and the federal exclusionary rule applies.

> There is no federal constitutional requirement that a misdemeanor be committed in an officer's presence before a warrantless arrest may be made. In Street v. Surdyka (4th Cir. 1974) 492 F.2d 368, the court held that the Fourth Amendment does not prohibit warrantless arrests for misdemeanors committed outside the officer's presence. In Street, a taxicab driver brought a civil rights action against a police officer on the grounds that his arrest was made in violation of the Fourth Amendment. Maryland law imposed the additional requirement that a warrantless misdemeanor offense must be committed in the officer's presence. In holding that the trial

11

court did not err in denying a directed verdict for plaintiff, the court stated, "We do not think the fourth amendment should now be interpreted to prohibit warrantless arrests for [offenses] committed outside the officer's presence." (Street, supra, 492 F.2d at p. 372.) The court, after a lengthy discussion, concluded that the only federal constitutional requirement for a valid arrest is that it be based on probable cause, regardless of whether it is a misdemeanor or felony. (Id., at pp. 371-372.)

The Ninth Circuit Court of Appeals has reached the same conclusion. In Barry v. Fowler (9th Cir. 1990) 902 F.2d 770, the court, when faced with a civil rights challenge based on an officer's arrest which was in violation of California Penal Code, subdivision 1, section 836 held that the requirement that a misdemeanor must have occurred in the officer's presence was not grounded in the Fourth Amendment. The court relied on Street v. Surdyka, supra, 492 F.2d 368, in its decision.

The federal standard for a warrantless arrest depends upon whether, at the moment the arrest was made, the officers had probable cause to make it-whether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent person in believing that the petitioner had committed or was committing an offense. (Beck v. Ohio (1964) 379 U.S. 89 [13 L.Ed.2d 142, 85 S.Ct. 223].)

In the case at bar, there is no question that there was probable cause for the officer to believe that appellant had driven a vehicle while under the influence of alcohol. Appellant was seated in the driver's seat behind the steering wheel, the hood was hot, the engine and lights were on, the keys were in the ignition, and appellant exhibited objective signs of intoxication.

Because Proposition 8 provides only for suppression of evidence obtained in violation of federal constitutional rights, and because a misdemeanor arrest made where the offense was not committed in the presence of the arresting officer is not a violation of constitutional magnitude, it

1                  can be concluded that appellant's Fourth Amendment
rights were not violated as her arrest was
supported by probable cause. For this reason, the
order of the lower court, denying the motion to
suppress evidence pursuant to Penal Code section
1538.5, is affirmed.

1 Cal. App. 4th Supp. at 13-14.  The same rationale applies here.

Finally, the defense here argues that California Vehicle Code § 40300.5, which otherwise authorizes a peace officer to arrest someone based upon reasonable cause to believe that the person had been driving under the influence of alcohol, is limited to cases involving traffic accidents.  This argument must be rejected.  See People v. Thompson, 38 Cal. 4th 811, 819 (2006)(California Supreme Court concluding that a report by a private citizen to police that the defendant had thrown an empty vodka bottle from his car, passed out, woke up, drove away erratically and too fast and ran red lights and stop signs, established probable cause justifying the warrantless arrest of the driver under § 40300.5 in a case that did not involve a traffic accident.); see also People v. Schofield, 90 Cal. App. 4th 968, 972-75 (2001).

Here, the CHP officers properly relied on the information provided by reserve officer Anspach, Senior Airman Ferguson and Staff Sergeants Wortman and Goad.  The observations of those officers clearly established probable cause justifying defendant Fay's arrest by the CHP officers pursuant to California Vehicle Code § 40300.5 for driving under the influence of alcohol.

/////

/////

**CONCLUSION**

For the reasons set forth above:

1.  The motion of defendant is DENIED; and

2.  The matter is set for Status Conference on March 13, 2007, at 9:00 a.m. in Courtroom 27.

IT IS SO ORDERED.

DATED: February 23, 2007.

_____
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

Ddad1/orders.criminal/fay203oahsuppress0207

14